All rise. Please be seated. So, as you can see, I'm here by myself today. Justice Welch and Justice Goldenherz are both on the panel with me, but neither could be here for the argument today. As you also know, the arguments are recorded, and both of them will participate in the decision on the case and listen to the oral arguments via the recording. So, this is case number 5-16-0299, Bosslet & O'Leary, Ltd. v. Illinois Bell Telephone Company, for the appellant, Stephen Hughes, and for the appellee, Gregory Pals. Thank you. So, Mr. Hughes, whenever you're ready. Thank you, Your Honor. The matter that is before you this morning, Judge, is essentially what is the scope in Illinois of Rule 224 discovery. I always have learned to assume that the briefs have been read, and I'll assume that in this case, and obviously you're the boss here if you have any questions, and you're welcome to go into the brief, but I try to just get to the heart of the argument, and if I can leave something out or if I'm not clear, I'm obviously very open to questions. So, the nature of the underlying case here is that a customer of Illinois Bell has an allegation. There hasn't been a complaint filed in terms of a lawsuit that the party was a victim of an alleged cramming scheme. Essentially, they had services through Illinois Bell, and the discovery that's directed to Illinois Bell, the petition for discovery in this case, makes it clear that it's their position that if they had $40 worth of services on day one, that it was somehow crammed down their throat, that they had $70 worth of services on day two. So, in a nutshell, it is somebody changed our account without our permission, and we didn't agree to it, and we want to know who it was. In its simplest form, that's kind of where this case arises out of. So, the discovery in this case, pursuant to Rule 224, was directed to Illinois Bell. The discovery, in my opinion and my client's opinion, is overly broad and is a misuse and abuse of Rule 224 and the purposes for which Rule 224 discovery are to be used. The courts are pretty clear in Illinois that the reason and the use of Rule 224 is to identify other potential parties. It's not to conduct broad-based discovery. It's not to make your case. It's not to prove motive. It's not to prove liability. It's to look for other potential defendants that may belong in the case. Now, given that in this case, Basler and O'Leary had an account with Illinois Bell that they say was changed, you know, crammed, however we want to put it, it's obvious that Illinois Bell was in their sights as a potential defendant in a civil lawsuit. So what happened in this case was 60 discovery requests were sent to Illinois Bell, and we believe that those are overly broad and beyond the purpose of Rule 224. In its simplest form, we believe that Rule 224 would be, for example, judge, okay, if Basler and O'Leary's account was changed, that can be determined easily enough from documents, from the billing record, from you went from U-verse A to U-verse A-plus, and I'm just saying that, you know, by analogy, not to try to be correct with the names. And now you've been charged $30 more a month for that. So clearly, if it's their position that that happened without their permission, then they have a potential defendant in a lawsuit in Illinois Bell, and we're not deciding that issue here today of liability, nor are we contesting the idea that they have identified a particular defendant, a potential defendant, and in fact, that's our point. In this case, there is a document that was identified that identifies a woman by the name of Janice Peterson who may have been involved in some way in the changing of the account, let's say, and she is purported to be connected to a company called MMI Industries. It's our position, judge, that the purpose and the scope of Rule 224 is to say, okay, Illinois Bell, who did you use, if not yourselves, who would have been involved as an additional potential party defendant in changing our account in this cramming scheme, as they put it? So the purpose would be, we believe, for the Rule 224 discovery, judge, would be, okay, do you make these changes in-house in Illinois Bell? Yes or no? Okay. If you don't, who would you have contracted with that might try to sell services, might try to, you know, we've all been, received phone calls, phone messages, do you want service A or B, or can we increase your, there's probably not a person alive in Illinois or anywhere else in the United States that hasn't received that kind of a call or somebody trying to sell a service. So I think the discovery along those lines of, if someone changed Boslett and O'Leary's account, who did you work with, if not Illinois Bell on its own, what third parties would there have been? Is it this Janice Peterson and MMI, and I know in this case the petitioners slash respondents in the appeal have said, well, they haven't been able to locate MMI or they haven't been able to find them. So it seems that the reasonable scope of discovery would be here as, Illinois Bell, you're charging us here. You've got the account. If you didn't do it, who did? So the appropriate discovery in this case would be what companies, if any, did you contract with? Who did you have an arrangement with to sell services? Who would have been contacting customers and asking them on your behalf as a third party, do you want additional services? Do you want to increase the nature of your account and what you get from us? Illinois Bell is already, in other words, within the scope. They've been identified as a potential defendant. And the discovery that was received in this case goes up and down the line of, from within Illinois Bell, who are the management people that would be involved in that decision? Who would be the people from within Illinois Bell who would make that decision? What would their motives be? Would they receive bonuses? Would they receive some sort of financial benefit or gain? Name everybody at Illinois Bell who would receive some sort of financial gain or benefit from increasing that plan. It's our contention that all of that is for 2-402 discovery. You name them as a party, and then you say, okay, Illinois Bell, who are your people that would be involved in a decision like this? Who would benefit from it? Who would have the authority to review this account? Who would have the authority to order, you know, take this list of customers and contact them as potential individuals to increase their services? That's the appropriate purpose for 2-402 discovery after you name a party. Here we're simply under 224 trying to identify parties. And the distinction is that I think that under the case law it's pretty clear that you don't get to ask all different levels of managerial people, subordinate people, people all up and down the line at Illinois Bell. Illinois Bell is already one of your potential defendants. So to try to prove your case with motive and all of that type of thing and who would have benefited at the company within Illinois Bell is overreaching and beyond the scope of this discovery. We're not here today arguing that if suit gets filed against Illinois Bell that it wouldn't be appropriate to try to say, okay, Illinois Bell, you're a defendant in this case. Let's get to the bottom of it. Who had this authority? Who could order this? What's their incentive? Are they getting paid bonuses? Are they getting paid, you know, are they getting paid so much per account that they add, you know, if they're salespeople or whatever the case may be? But to take it through all the different levels of people on the supervisory level and any document that documents any conversation that anyone within Illinois Bell had with anybody at any time within that company, that that's going too far and is beyond the intended scope of 224. What I think would be fair is who at Illinois Bell, who are any of the third parties that Illinois Bell would deal with to try to, if you're not doing it yourself, if you're going out and subcontracting these responsibilities and these deals, who are those people? And who at Illinois Bell, and the trial judge said, you know, there is some gray area here, and so I can see there's a little bit of gray area, but, you know, who would have the authority to deal with those outside third parties? Who would retain them? So that each and every entity, and I don't think it can be, I don't think I could argue in good faith that they're not entitled to know who Illinois Bell dealt with if they had somebody else do this, and, you know, if it's Illinois Bell and Brown Company and Jones Company and Smith Company who would be involved in trying to sell services on our behalf. Well, let me interrupt you for just a second. I mean, my understanding is that you acknowledge that they perhaps at a time in the near future might have the right to ask these questions, but through a 224 that it's premature and they should not be allowed to do that. That's exactly right. That they've already found defendants which they can then do normal discovery with to get to that other information. Let me ask you a more preliminary question than that. It wasn't raised by you or anyone else, of course, but how does this court have jurisdiction of this matter in light of the fact that, while I think it is somewhat unusual that on a petition for 224, on a motion, or petition, that they have two orders involved and one of them the judge, circuit judge, took into consideration or under advisement, I should say, several of the requests, several of the numbered requests that had been made. And I don't see, and correct me if I'm wrong, I don't see anywhere in the record that what he took under advisement was ever resolved. He never issued an order on those matters he took under advisement which would not make that a complete and final order to grant us jurisdiction. Well, that is certainly an interesting point, Judge. Under the law in Illinois, the rulings on a 224 case, the case is over when the decision is made as to what discovery is going to be allowed and then it's right and appealable. But it seems that what has happened here is that there's been a confusion, and in my view by the trial court, that the rule is something greater that we could talk about both 224 and 2402. If you look at the underlying record, and it's not all that long, in the case, the judge has a substantial discussion about Sigorski and the rulings about what objections were appropriated, you know, what you can have and, you know, he, I don't mean this in some personal attack way or whatever, but he admonished me about, hey, you know, let's look at this case and see where this is going forward in terms of what's going to be allowed and what's going to be discoverable. Sigorski, I think, is completely a 2402 case. In this case, we're talking about purely the scope of identifying parties and not what will be allowed at a later time with respect to things like that he took under advisement who might financially benefit. And some of those things that he took under advisement would be for the very nature of deciding what discovery would be appropriate once a lawsuit is filed. So I agree with you in the respect that some of the things that he took under advisement should be later in a 2402 circumstance when it's properly before the court. And what we have here, what happens here, Judge, is a set of requests was sent to OLL. And they had them for a period of time, and then it got kind of nasty back and forth where they haven't responded. What we didn't have in the first place before we had a motion, we already had a motion to file before the judge ever had any kind of a ruling on allowing the 224 discovery in the first place. And so that's what I was suggesting, that there were two orders, which was, I think, unusual for this type of situation. Because what happened was when I got the case literally on June the 16th, there was a motion to compel on June the 7th. And the motion to compel wasn't right, and I argued that at the time, because there hadn't been an order to allow discovery in the first place. What's supposed to happen under Rule 224 is that the party submits the proposed discovery to the trial court, and then the trial court makes a ruling on whether that discovery is going to be allowed or not. In this case, the ruling on what was going to be allowed came. What happened was I appeared and said, look, this is premature. We don't even have an order allowing these plaintiffs, potential plaintiffs, to proceed with the discovery in the first place, and we already have a motion to compel. So the judge said, well, I'll give you two weeks to basically brief the issue and raise your objections. So now we're raising our objections. So we do have kind of a hybrid here, Judge. I can't tell you that we don't in terms of the court, in my view, sort of had the cart before the horse in the fact that it was looking at a motion to compel in the first place, and then I was ordered to prepare objections to that discovery to be taken up, which the court then took up on the second hearing date. I don't think there was really an order to allow discovery until June the 7th of 2016, and then it was they come back in here prepared to argue your objections with respect to that discovery. So then to the extent that he took some of those objections under advisement, it doesn't satisfy the overall issue in the first place of whether the discovery as a whole went beyond the scope of 224, and that's how I think you get to your jurisdiction is that the court has to look at this, look at the requests. I've seen cases out of the first district, and the judges aren't thrilled about it where they say, we've literally gone through all of these discovery requests almost as if it was a trial court and said, here's what we're going to allow and here's what we're not. So it's not unprecedented that that would happen. But I think the nature of how this case was presented did create the circumstance to where it wasn't just, well, there were 60 requests, and it was like, well, some of them I'm going to allow and some of them I'm not. It wasn't a single order saying you get this discovery or you don't, and then you would have the record that you're talking about for what is a clearer jurisdiction. But I don't think that as the respondent in discovery and the petitioner here, we should be denied the opportunity for review for an abuse of the 224 because we kind of had these things piled on top of each other where we were already talking about the need to file objections and showing up two weeks later to argue those, and we actually got the order allowing discovery in the first place. Because it was on a motion to propel, and it was like, well, they're late. They essentially have waived those objections. What should have happened is I think the court should have taken the petition for discovery under advisement, looked at those, and I'll be candid with you, Your Honor. I know we're supposed to stand here like we have an answer to every potential question, but if there were 60 requests and the court said, yeah, 49 of these I think are overly broad, but there are some that I'm not really sure how I would rule in a 2402, it does sort of bag a cross-record of we haven't, you know, I've taken these under advisement. So I guess at this time, this court can have jurisdiction, I believe, to the extent that those requests have been ruled on, and maybe it goes back on remand for the trial judge to decide with respect to those other matters that are taken under advisement so that there's a complete record on each of these issues before the court. Well, it appears that the appeal was taken on the June 20th order, and the June 20th order is the one where there's still matters left to be decided by the trial court. I think the June 7th order could be construed as the order that could have been appealed on, although it doesn't necessarily grant, it does not specify that it is granting their petition. It's setting it out, and then to file objections. To file objections, right. And to have him take them up in 10 days, essentially. Right. And I think probably they, when they filed the petition, they should have served it on you guys. You guys came in on a later date, and then the court decided if they grant their petition for leave to do discovery or not. But that's what I'm trying to figure out is if this appeal is right for us to take into consideration, and I understand your position on it. Thank you for that. Thanks. And that is the concern that I have. So if you want to continue on. Yes, sir. So basically. Or not. How about timing there? All right. You can give a final thought. Well, Your Honor, ultimately the bottom line here is that we believe that the discovery that is requested here, with some consideration for objections at a later time under 2402, is appropriate for that type of setting and not appropriate for Rule 224 motion, as was the case here. And that the proper procedure wasn't followed in the underlying court, and that we were already at the stage of a motion to compel. And I was responding on 12 hours' notice before there was actually an order granting the discovery. And that sort of happened at the motion to compel was when the judge gave the order to allow the discovery. Okay. Thank you. You'll have time after counsel's argument for rebuttal. May it please the Court. Good afternoon. Good afternoon. Gregory Powles. I represent Boston and O'Leary. Why do we trust trial courts? Why do we give courts, trial courts, discretion? And why do we review some items, not all, under abuse of discretion? Because quite clearly, there are standards of review such as de novo, where this court will look at the record cold and make its own determination as to what was proper and improper. This general area of discovery, as well as specifically 224, is not such an area. We grant the trial courts broad latitude. Why do we do that? Because they are in the best position to determine what's right, what's fair, what's just, what's really going on. Okay. They can smell smoke because they are right next to the force, as opposed to this court, which is, you know, has a step back from the front line proceedings. AT&T has changed its story, by my count, probably seven times now. It has changed part of its story, as it stood up here at the podium today. Ask yourself this question. Why does a party change its story? Why does a party change its story multiple times before the trial court? Why does a party tell this court a different story than it told the trial court? Why does that happen? And I respectfully suggest there's only one reason that happens. So, AT&T took the position in the court below. Let me take a step back, because there was some discussion of the procedural events that happened here. AT&T was in communication, AT&T's counsel was in communication with our firm for months, and that is clearing the record. AT&T had been served for a long, long time. They were supposed to appear. That's the terms of the summons. They did not appear, despite having been served. Okay. So any delay is due totally to AT&T's own dilatory practices. This is all in the record, all in the briefs. I reached out to AT&T's corporate counsel and said, hey, you guys have been served. You haven't showed up like you're supposed to. It seems like emotionally compelled would be the thing to do, but what are you going to do? Got the answer back, black and white, in our brief. Oh, we're going to respond, Mr. Powles. We're diligently looking for responsive documents, and we'll get them to you just as soon as we can. That was the story from AT&T's counsel. I waited another reasonable amount of time in order to, you know, try to get along with his counsel, be cooperative. Low and behold, no. About face, we're not going to do anything. So it seemed that emotion, to me at least, they hadn't even appeared. Emotion to compel seemed to be the appropriate thing to do. Whether you want to say that was, you know, technically the correct piece of paper to file or not is entirely moot. Why? Because AT&T had notice of the hearing. They showed up. They complained about a lack of notice, and the trial court said, okay, two more weeks. You say you haven't gotten proper notice or you haven't been fully apprised of the issues. You don't know what petitioners are looking for, supposedly. Fine. We'll cure all that by coming back in two weeks. Is that enough time? AT&T agreed on the record, yes, that is sufficient. So any story you hear by counsel in this room today about I only had 12 hours notice or the night before is misleading at best. The party AT&T knew very well for months what was going on, and that is black and white. Again, even giving them the benefit of the doubt, which they certainly do not deserve due to their misleading and frankly outright prevarication to me, even if you were going to allow them that, counsel showed up, agreed that the additional two weeks would be sufficient for their purposes, and we moved on. So there's no, absolutely no issue with respect to that. AT&T's story was we have complied with the requirements of Rule 224. That was their story before the trial court. We've given enough to identify potential defendants in this case, which they admit is the purpose of it, and which is the only purpose that we served the 224 to begin with, because recall this is a fraud case. Fraud and forgery. It's not necessarily, we don't know if it was cramming or not. You heard AT&T talk a lot about, well, you should have asked us who we use to sell our services and who sells our services. We don't know how AT&T conducts business. Boston & O'Leary is a law firm. What it knows is that one day it kind of billed the mail saying, surprise, instead of the numbers here, $45, you now have to pay $78, or whatever the figures actually were. And, you know, Boston & O'Leary said, well, what's that? We didn't order these additional services. So they contacted AT&T and said, hey, AT&T, what's up with that? What's going on there? AT&T told them, well, that was authorized by Janice Peterson. That's the name they gave, Janice Peterson. Long before contacting us, our firm, Boston & O'Leary said to AT&T, we have no idea who that is. Who's Janice Peterson? AT&T, dead silence. Wouldn't tell them another thing about it. Gave them a name and that's it. Well, what's in a name? So they contacted us and said, hey, this is fishy. And AT&T is completely stonewalled. So we filed a 224 to get to the bottom of it. AT&T's position below was that they had provided a piece of paper to us that identified properly who the potential defendant was. As the trial court, and this is all in black and white, again in the briefs, as the trial court on the front lines was apprised, that was a lie. We were never provided with that document. Nobody had seen that document before. And lo and behold, there's the forged signature of our client, Terence O'Leary, principal of Boston & O'Leary. And it does indeed have a name on it, Janice Peterson. And from there on out, AT&T took the position in the trial court that this piece of paper, it's A4 as to our brief, was sufficient. This told Boston & O'Leary petitioners all they needed to know to identify the potential defendant in this case. That was their position. Well, no. A name standing alone does us no good. And as we pointed out, so as we point out to the trial court, what possible good did that do us? Janice Peterson doesn't mean anything to me. We don't know her address, where does she live, what city is she in, what state is she in? So AT&T said they fully complied. There's no reason for an order to judge if we fully complied. Then they changed their story. This is the third change now, by the way, to say, well, we're still looking for who Janice Peterson is, okay? Two weeks ago, they told everyone in the courtroom that they complied. They fully identified her. Two weeks later, they're before the court saying, well, we're still looking into who she is. The court ordered them to, you know, it had about enough at that point. There had been some other representations that were false. It entered its order, you know, let's get to discovery, guys. There was the representation that they had done so much that they might file a certification with the court, a sworn declaration. We have no more information on Janice Peterson. It's in the record, black and white. There was no representation. Did that happen either? No. What happened? Notice of appeal was filed. So now they're up before this body, and I will give counsel credit. His tone and oral argument is quite reasonable, but it's not counsel's tone that's an issue here. It's his client's position, and it's constant stonewalling of our attempt to get to the bottom of this matter. Let's, again, take a step back. What happened? They changed Bossa-Leno Leary's account. On the basis of what? How? Who? Who authorized them to do that? Simple question. Identify who allowed that. Their story was this piece of paper, A1 in our appendix, fully complies with, is a full answer to that question, okay? They were so embarrassed by that position that they didn't even include that paper in their own appendix, okay? We had to put it in the record. Their position in the trial court was so basically such a disgrace to them, they didn't even put it in the record before they came up to this court. What possible use is the name Janice Peterson standing alone, bare bones? That is of no use whatsoever. They changed, or this name MMI Industries, as I've also put in the record. Not only is there no indication whatsoever of who Janice Peterson is, if that's even a real person, but there's no entity called MMI Industries Court. That entity, so far as it's known, was dissolved, I believe, in the late 90s, if memory serves, decades ago. Dissolved decades ago. So this is clearly all a sham, okay? This is all ghosts, smoke and mirrors. And they claim to have changed our client's account on the basis of these smoke and mirrors without giving us any indication. What does AT&T do? Does it get a piece of paper lofting over the transom that says, oh, here's a piece of paper that says change an account? We'll go ahead and do that. No idea who the sender was? No idea who the author was? That's bogus, okay? And so, to come full circle, this is why we really trust the trial courts and give them amount of discretion with respect to discovery. Because the trial court knows when it smells a rat. And quite frankly, this entire case, stumped like a hamburger cheese. AT&T's behavior was not forthright in any manner. It knows much more about Janice Peterson than it's saying. It knows much more about MMI Industries, whoever that is, than it is saying. It must, because it would not otherwise go around willingly changing people's accounts. The trial court said, give them more information including that. It was reasonable to do so. The only basis upon which this court can or should second guess the trial court's decision was if it finds that no reasonable person could have looked at what the trial court looked at and done what the trial court did. And that, I submit, is completely beyond the bounds. Any reasonable person could look at these circumstances and say, AT&T, you've been deficient. You've been dilatory. You've been stonewalling. You know more than you've said. You've denied that you know more than you've said, but I'm going to order you to comply with the request. That is perfectly reasonable, and there's no basis to reverse. So all that being said, I appreciate Your Honor's also addressing the question of jurisdiction. Jurisdiction probably is lacking at this point. I don't know what the, perhaps there would be, I suppose it would be a motion for Sanchez, because we haven't got anything from AT&T in the meantime. I can certainly tell you that. I don't know if our next step in the trial court then would be a motion for Sanchez or what, but I appreciate Your Honor's raising that issue, and I think it is a good issue to discuss. That being said, I have more than I can say, but if I may, I'd invite the court to, if the court has any questions, I'd love to answer them. If not, that's fine. Okay. Thank you. In closing then, the trial court was thoroughly correct in its decision to order AT&T to provide more information than AT&T has. If AT&T has it, if it doesn't, it can't provide what it doesn't have. But it certainly had offered to give the trial court its sworn certification, that was the case, rather than follow through on its promises. Just like all the prior promises it had made, it avoided it by taking this appeal. Respectfully suggest the trial court's order should be upheld. The case should be certified. Thank you very much. Thank you. Hello, Your Honor. I've been practicing for 29 years, and I believe that I know when my credibility is being impugned. And here's what I have to say about this. I was retained in this case from June 6, 2016. I called Mr. Powles that afternoon and said, I just got this matter. I haven't even had a chance to look at it. I don't have any paper. His answer, tough luck. That's too bad. I think to encourage that kind of behavior is not what our profession ought to be about. I have here copies, and I'm sure you have them, and I'm happy to leave these with you, of the record before the trial court. I'll see him behind every statement that I made with my reputation on the line as to my truthfulness and how I address the trial court. I told the trial court that I had had the case for less than 12 hours, and he said, well, we've all been that guy, okay? I've been practicing law for 29 years in St. Clair County and everywhere else, and when someone gets a case with virtually no notice, it's customary to give that person some time to be able to respond. I had a document that was sent to me that I have as part of your record that indicates that this person, Janice Peterson, was involved in this transaction. It would appear Mr. O'Leary's name is on it, as if it were signed. I'm not a handwriting expert, but I said, well, apparently he had a document. There's a signed document that I have here with Janice Peterson's name on it, the business address from, I guess, from Mr. O'Leary's office that she works for. It says solution provider's name, MMI Industries Corp, solution provider sales rep, Janice Peterson. It had an email address for her, and that's what I handed them at that time, and I said, I presume you have this. Mr. Powles at that time said, hey, on the second occasion when we showed up, Mr. O'Leary just happened to be in the courtroom, and the record will show that I said I am not calling Mr. O'Leary a liar. I just have this document. I had the document for about 12 hours the last time that would purport to be the person involved in that transaction. I've spent the last 10 days trying to figure out who this person is and where she is, and I want to be clear, and it's in the transcript, that I'm not telling Mr. O'Leary that he's a liar or that I'm saying that he did sign this or that I know that he signed it, and I made that very clear. I said I don't want to misrepresent anything to this tribunal, so the suggestion here today of seven different stories and that somehow whether it was corporate counsel or me when I got involved one day beforehand, and I guess I am a little emotional about this, but we really only have one thing in our practice, and that's our reputation and our candor to the tribunal. So the idea that somehow I misrepresented what had gone on here and came up with seven different stories is just simply ridiculous, and most lawyers would have given a lawyer who receives a case less than 12 hours before there's a motion to compel, which wasn't appropriate under the procedure at the time because there hadn't even been an order ordering that discovery. No, I'm not going to do it. I've given your people enough time. We're going forward tomorrow. So I showed up with the document that on its face purports to have this Janice Peterson information, and that's what the court has before it. The idea that I attempted in any way to mislead that trial court or you here today, sir, I will stand on the record of what I said here and vehemently just deny that as ridiculous. The idea that we said that we had somehow fully complied, I guess we'll see if that's in the record. The court can look at that. That was the document I was given that that entity and that person was involved in this transaction, and that's what I gave them at the time. And so there was no effort on my part or no intention to mislead the trial court or otherwise play hide and ball. And like I said, Mr. O'Leary was there that day, and I went out of my way on the record, and it's in the record because I read it and I wanted to make sure I wasn't saying that somehow their account did not get changed or that they were making it up or that they were lying or that I didn't think he served that he had signed that document personally. Let me ask you one further question about the procedure. You respond and do not object to certain of those requests, and can you tell me why at that time no objection was made? There were certain of those. Okay, so we show up at the motion to compel. I've just gotten those requests, and then we had two weeks, and it's in the record to file whatever objections we were going to file. And then I didn't object to all of them because quite candidly, I think that some of them are legitimate for grounds for discovery. Under 224? Under 224, yes, sir. And we asked for a stay of those proceedings for this appeal, but I made it clear to the court at that time that I was not objecting to certain of those requests as they were appropriate under 224. Okay. All right. Thank you. Thanks, Judge. Thank you. All right. Well, myself and the other two judges will confer on this and issue a ruling as quickly as possible. Thanks, Judge. Thank you. We'll stand in recess until after lunch. All rise.